IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RODNEY WARRENFELTZ,** an individual, <br><br> Plaintiff, <br><br> v. <br><br> **HOGAN ASSESSMENT SYSTEMS, INC.**, an Oklahoma corporation, <br><br> Defendant. | Case No. 17-CV-428-GKF-FHM |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT FOR BREACH OF CONTRACT
AND BRIEF IN SUPPORT**

John C. Richter, OBA No. 20596
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
jrichter@kslaw.com
(202) 626-5617 (telephone)
(512) 457-3737 (fax)

Michael J. Biles (*pro hac vice*)
Texas Bar No. 24008578
Srimath S. Subasinghe (*pro hac vice*)
Texas Bar No. 24093226
KING & SPALDING LLP
500 West 2nd Street, Ste. 1800
Austin, TX 78701
mbiles@kslaw.com
ssubasinghe@kslaw.com
(512) 457-2000 (telephone)
(512) 457-2100 (fax)

John D. Russell, OBA No. 13343
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4217
jrussell@gablelaw.com
(918) 595-4800 (telephone)
(918) 595-4990 (fax)

**COUNSEL FOR PLAINTIFF
RODNEY WARRENFELTZ**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS .......................... 2

SUMMARY JUDGMENT STANDARD ................................................................................ 6

ARGUMENT ................................................................................................................................... 7

I.      The 2013 Stockholders' Agreement unambiguously requires Hogan Assessment to purchase Warrenfeltz's shares for 100% of Base Value. ..................................................... 7

        A.      The 2013 Stockholders' Agreement requires Hogan Assessment to purchase Warrenfeltz's stock for 100% of Base Value because he is a Founder of the company under the agreement. ....................................................... 8

        B.      The 2013 Stockholders' Agreement requires Hogan Assessment to purchase Warrenfeltz's shares for 100% of Base Value because he has reached "Retirement Age" under the Agreement. ............................................... 11

II.     The calculation of contract damages is not in dispute. ..................................................... 12

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**           **Page(s)**

*Bank of the Wichitas v. Ledford*,
    151 P.3d 103 (Okla. 2006) .................................................................................... 9, 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................... 7

*DJRJ, LLC v. U-Swirl, Inc.*,
    No. 16-CV-21-GKF-FHM, 2017 WL 2961375 (N.D. Okla. July, 11,
    2017)(Frizzell, J.) ........................................................................................................ 11

*Edens v. Netherlands Ins. Co.*,
    No. 14-CV-377-GKF-TLW, 2015 WL 12585905 (N.D. Okla. Aug. 31, 2015)
    (Frizzell, J.) ................................................................................................................. 6

*Gamble, Simmons & Co. v. Kerr-McGee Corp.*,
    175 F.3d 762 (10th Cir. 1999) ..................................................................................... 9

*Logan Cty. Conservation Dist. v. Pleasant Oaks Homeowners Ass'n*,
    374 P.3d 755 (Okla. 2016) .......................................................................................... 9

*Osprey LLC v. Kelly-Moore Paint Co.*,
    984 P.2d 194 (Okla. 1999) .......................................................................................... 8

*Otis Elevator Co. v. Midland Red Oak Realty, Inc.*,
    483 F.3d 1095 (10th Cir. 2007) ................................................................................... 8

*Pitco Prod. Co. v. Chaparral Energy, Inc.*,
    63 P.3d 541 (Okla. 2003) ............................................................................................ 9

*S. Corr. Sys., Inc. v. Union City Public Sch.*,
    64 P.3d 1083 (Okla. 2002) ......................................................................................... 11

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 6

# INTRODUCTION

Defendant Hogan Assessment Systems, Inc. ("Hogan Assessment") and its majority stockholder, Robert Hogan ("Hogan"), engineered a scheme to redeem plaintiff Rodney Warrenfeltz's ownership stake for a mere 25% of its actual value. Hogan Assessment's scheme breached the unambiguous terms of the Amended and Restated Stockholders' Agreement (the "2013 Stockholders' Agreement," attached as Warrenfeltz Aff., Ex. 1-A),which guaranteed Warrenfeltz and Hogan, as Founders of the company, 100% of Base Value for their stock, regardless of the reason for redemption.

The scheme culminated in Hogan Assessment's termination of Warrenfeltz "for cause" just weeks before his planned redemption and retirement after 17 years spent building the company. According to Hogan Assessment, the "for cause" termination triggered a buy-out provision in the 2013 Stockholders' Agreement at a 75% discount. But the buyout provision relied upon by the company is not applicable to Founders like Warrenfeltz and Hogan. Warrenfeltz and Hogan, designated as "Founders" under the 2013 Stockholders' Agreement, hold special rights with respect to company management and stock redemptions. Hogan Assessment cannot engage in specified transactions without first obtaining the consent of the Founders. The Founders' Consent Provision at issue here is paragraph 11(h), which requires both Founders to approve any company expenditure in excess $50,000. *See* Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders' Agreement, ¶ 11(h). There are only two exceptions to paragraph 11(h)'s consent requirement: the use of funds or debt in connection with (1) the company's purchase of shares from a shareholder at 100% of Base Value under a "Mandatory Purchase Event," and (2) the funding of the "Employee Shares Pool." *Id.* ¶¶ 3(a), 9(c). The intent of this provision is evident from the plain meaning of its words—the Founders did not give the company the power, without their consent, to purchase their shares for any amount less than 100% of Base Value. Therefore, the Company's attempt to purchase Warrenfeltz's 1,500 shares at 25% of Base Value under the "Optional Purchase" provision of paragraph 3(b), by means of a $5.8 million promissory note, without Warrenfeltz's consent, breached the 2013 Stockholders' Agreement.

Hogan Assessment also breached the 2013 Stockholders' Agreement because Warrenfeltz had already reached "Retirement Age" before the company elected to purchase his shares. Under paragraph 2(c), stockholders who reach the age of 55 and have worked for the company for more than ten years have reached "Retirement Age" and have the right under paragraph 3(a) to require the company to purchase their shares at 100% of Base Value. *Id.* ¶¶ 2(c), 3(a). The agreement requires the company to purchase Warrenfeltz's shares at 100% of Base Value under all circumstances. The Court should grant partial summary judgment against Hogan Assessment for breaching the unambiguous terms of the 2013 Stockholders' Agreement in an attempt to cheat Warrenfeltz out of the value of his stock.

### CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are material facts over which there is no genuine dispute:

1. Hogan Assessment is an Oklahoma corporation with its principal office in Tulsa County, Oklahoma. Richter Decl., Ex. 2-A, Hogan Assessment's Petition, ¶ 1.[1]

2. Hogan Assessment is a consulting firm that develops personality assessments for employers to evaluate current and potential employees. *Id.* ¶ 5.

3. In 2000, Warrenfeltz joined the company as a managing partner on the condition he obtain an equity interest. *Id.* ¶ 7.

4. In 2000, Warrenfeltz purchased 20% of Hogan Assessment (2,000 shares). *Id.* ¶ 9.

5. On or about July 31, 2000, Warrenfeltz executed a stockholders' agreement (the "2000 Stockholders' Agreement") to which Hogan Assessment, Robert Hogan, and Joyce Hogan were also parties. *Id.* ¶ 10.

6. Under paragraph 10(h) of the 2000 Stockholders' Agreement, Hogan Assessment could not spend corporate funds or incur debt over $50,000 without the approval of stockholders holding 85% of the company's stock. Warrenfeltz Aff., Ex. 1-B, 2000 Stockholders' Agreement, ¶ 10(h). Because Warrenfeltz owned 20% of

---

[1] Hogan Assessment filed its petition against Warrenfeltz in Tulsa County District Court on May 8, 2017. *Id.* Warrenfeltz removed the action to the United States District Court for the Northern District of Oklahoma on May 30, 2017. Hogan Assessment voluntarily dismissed its lawsuit on July 18, 2017.

       Hogan Assessment's stock, the company could not spend funds or incur debt in an amount exceeding $50,000 without his consent. *Id.*

7. In 2013, Warrenfeltz, Hogan, other Hogan Assessment shareholders and the company executed the 2013 Stockholders' Agreement. Richter Decl., Ex. 2-A, Hogan Assessment's Petition, ¶ 27.

8. The 2013 Stockholders' Agreement "shall be construed in accordance with the laws of the State of Oklahoma." Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders' Agreement, ¶ 21.

9. Hogan Assessment does not challenge the validity of the 2013 Stockholders' Agreement. *See* Dkt. No. 23, Mot. to Dismiss, at 9 n.8.

10. Warrenfeltz and Hogan are "Founders" under the 2013 Stockholders' Agreement. *See* Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders' Agreement, Recital B.

11. Under paragraph 11 of the 2013 Stockholders' Agreement, Hogan Assessment must obtain the Founders' approval before engaging in certain transactions. *Id.* ¶ 11. Paragraph 11 states, in part, the following:

> <u>Founders' Approval Required</u>
>
>     The STOCKHOLDERS recognize and acknowledge that certain actions to be performed by the CORPORATION are special and unique and that the FOUNDERS play an important role that is to be respected without regard to their level of ownership of SHARES over time, and so as long as they own any SHARES of the Corporation (directly or through one or more EXEMPT TRANSFEREES), the parties hereto agree that the following actions will require the affirmative vote of both FOUNDERS ("Founders Approval")
>
>     \*    \*    \*
>
> (h) The expenditure of any funds or the incurrence of any indebtedness (subject to the last sentence of this <u>Paragraph 11</u>) relating to any Major Operational Matter. (As used herein, the term "<u>Major Operational Matter</u>" shall mean an amount in excess of Fifty Thousand Dollars ($50,000).)

12. The last sentence of paragraph 11 of the 2013 Stockholders' Agreement states:

> Notwithstanding the foregoing, each FOUNDER agrees to vote his SHARES and to cause the SHARES owned by any

3

>   EXEMPT TRANSFEREE of a FOUNDER to take such action as may be necessary to permit the SHARES of any SHAREHOLDER to be redeemed or purchased by the CORPORATION in any Mandatory Purchase Event or in connection with the funding of the Employee SHARES Pool.

13. Paragraph 3 of the 2013 Stockholders' Agreement identifies and explains Purchase Events. *Id.* ¶ 3.

14. Paragraph 3(a) defines a "Mandatory Purchase Event," which includes the election by a Founder to redeem shares or the election by any stockholder to redeem shares after reaching Retirement Age (defined in paragraph 2(c) as age 55 after not less than 10 years of service with the company). The "Mandatory Purchase Event Price" is defined as a per share price equal to 100% of Base Value, determined in accordance with paragraph 5(a). *Id.* ¶ 3(a).

15. Paragraphs 3(b), (c) and (d) define "Optional Purchase" events that give the company the option to purchase shares from stockholders upon the occurrence of certain events at a per share price of 25%, 65% and 85% of Base Value, respectively. *Id.* at ¶¶ 3(b)–(d).

16. Paragraph 9(c) identifies and explains how the company would designate shares for the Employee SHARES Pool. Under Paragraph 9(c)(i)(a), Hogan redeemed 3,000 shares to fund the initial Employee SHARES Pool. Under Paragraph 9(c)(i)(b), Warrenfeltz agreed to fund 1,000 additional SHARES to be redeemed annually "for cash equal to a Per SHARE Price at Base Value under Paragraph 5(a) payable in a lump sum" as follows:

    > Year 1:   Warrenfeltz (200)
    > Year 2:   Warrenfeltz (200)
    > Year 3:   Warrenfeltz (200)
    > Year 4:   Warrenfeltz (200)
    > Year 5:   Warrenfeltz (200)

17. On October 1, 2014, through a Joint Unanimous Consent of the Stockholders and Directors, the company and Warrenfeltz amended the 2013 Shareholders' Agreement to modify Warrenfeltz's funding of the Additional Pool under Paragraph 9(c)(i)(b). Warrenfeltz Aff., Ex. 1-D, Amendment to the 2013 Stockholders' Agreement, ¶ 1. Specifically, Hogan Assessment agreed to purchase 1,000 shares from Warrenfeltz "for cash equal to a Per Share Price at Base Value under Paragraph 5(a) payable in a lump sum" pursuant to the following schedule:

    > October 1, 2014:   Warrenfeltz, 500 Shares
    > June 1, 2017:      Warrenfeltz, 500 Shares

4

18. In compliance with its obligations under the October 1, 2014 amendment to the 2013 Shareholders' Agreement, on or about October 1, 2014, Hogan Assessment purchased 500 shares from Warrenfeltz in a lump sum cash payment of $4,635,000 (*i.e.*, a Per Share Price at Base Value under ¶ 5(a) of the 2013 Shareholders' Agreement). *See* Warrenfeltz Aff., ¶ 8; *see also id.*, Ex. 1-A, 2013 Shareholders' Agreement, ¶ 5(a); *id.*, Ex. 1-D, Amendment to the 2013 Stockholders' Agreement, ¶ 1.

19. In April 2017, Warrenfeltz provided notice to the Company of his intent to retire on June 30, 2017. Warrenfeltz Aff., Ex. 1-E, email correspondence (April to May, 2017).

20. On or about May 8, 2017—approximately three weeks before Hogan Assessment was obligated to purchase 500 shares of Warrenfeltz's shares at 100% Base Value under the October 1, 2014 amendment to the 2013 Shareholders' Agreement— Hogan Assessment terminated Warrenfeltz by letter stating that the Board of Directors had terminated Warrenfeltz's employment "for cause" effective May 8, 2017. Warrenfeltz Aff., Ex. 1-C, Termination Letter. The letter states, in part, that:

> Pursuant to the [2013 Stockholders' Agreement], you are no longer eligible to own Company stock, as a consequence of the termination of your employment for cause. Your 1,500 shares in the Company are deemed offered for sale… In accordance with Paragraphs 3(b) and 4 of the [2013] Stockholders' Agreement, the Company elects to purchase all of your shares in the Company at a Per Share Price equal to twenty-five percent (25%) of Base Value, with payments to be made in one hundred and twenty (120) equal installments with no down payment.

21. Warrenfeltz did not provide his consent to Hogan Assessment's election to purchase his 1,500 shares under the "Optional Purchase" event under paragraph 3(b) of the 2013 Stockholders' Agreement. Warrenfeltz Aff., Ex. 1-F, letter from Daniel Schwartz to Kirk Turner (dated May 11, 2017).

22. Hogan Assessment did not honor its obligation under the October 1, 2014 amendment to the 2013 Stockholders' Agreement to purchase 500 shares from Warrenfeltz on June 1, 2017 for a lump sum cash payment equal to a Per Share Price at Base Value. *See* Warrenfeltz Aff., ¶ 9; *see also id.*, Ex. 1-A, 2013 Shareholders' Agreement, ¶ 5(a); *id.*, Ex. 1-D, Amendment to the 2013 Stockholders' Agreement, ¶ 1.

23. On July 21, 2017, Hogan Assessment wrote to Warrenfeltz stating, in part, that:

> [Hogan Assessment] desires to tender payment for the 1,500 shares of [Hogan Assessment] owned by you, pursuant to Paragraph 3(b) and 4(e)(i) of the [2013] Stockholders' Agreement, by means of the Unsecured Promissory Note (the "Note") enclosed herewith.

Richter Decl., Ex. 2-C, letter from Christopher Kingham to John Richter (dated July 21, 2017).

24. The Note is dated August 1, 2017 and is for a principal sum of $5,858,000.00. *Id.*

25. Warrenfeltz did not provide consent for Hogan Assessment's July 21, 2017, tender of payment by means of the Note under the "Optional Purchase" event under paragraph 3(b) of the 2013 Stockholders' Agreement. Richter Decl., Ex. 2-B, letter from John Richter to Christopher Kingham (dated Aug. 4, 2017).

26. Hogan Assessment's July 21, 2017, tender of payment to Warrenfeltz by means of an unsecured promissory note for the sum of $5,858,000.00 constitutes an expenditure of funds or the incurrence of debt by the company in excess of $50,000 under paragraph 11(h) of the 2013 Stockholders' Agreement. Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders' Agreement, ¶ 11(h).

27. Hogan Assessment's July 21, 2017 tender of payment to Warrenfeltz was made under the "Optional Purchase" event in paragraph 3(b) of the 2013 Stockholders' Agreement—it was not a payment under a "Mandatory Purchase Event" under paragraph 3(a). *Id.* ¶¶ 3(a)–(b).

28. The use of funds or debt under the "Optional Purchase" event in paragraph 3(b) is not one of the two exceptions to the Founder consent requirement of paragraph 11(h) of the 2013 Stockholders' Agreement. *Id.* ¶ 11(h).

29. Using Hogan Assessment's calculation of the value of Warrenfeltz's 1500 shares at 25% of Base Value as $5,858,000, the value of Warrenfeltz's 1500 shares at 100% of Base Value is $23,432,000. *See* Richter Decl., Ex. 2-C, letter from Christopher Kingham to John Richter (dated July 21, 2017).

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Edens v. Netherlands Ins. Co.*, No. 14-CV-377-GKF-TLW, 2015 WL 12585905, at *2 (N.D. Okla. Aug. 31, 2015) (Frizzell, J.) (quoting *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir.

2005)).  Although the burden of showing the absence of a genuine issue of fact is on the movant, "the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* (citations and internal quotation marks omitted).  Rather, "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable factfinder could find in favor of the nonmovant."  *Id.* (quoting *Planned Parenthood of the Rocky Mountains Servs., Corp. v. Owens*, 287 F.3d 910, 916 (10th Cir. 2002)).  Once the movant has made a showing that there is no genuine issue as to any material fact, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

**I.     The 2013 Stockholders' Agreement unambiguously requires Hogan Assessment to purchase Warrenfeltz's shares for 100% of Base Value.**

The Court can and should rule as a matter of law that Hogan Assessment breached the 2013 Stockholders' Agreement because the facts necessary to prove liability are not in dispute and the applicable provisions are unambiguous.  Hogan Assessment does not dispute the validity or enforceability of the 2013 Stockholders' Agreement.  *See* Dkt. No. 23, Hogan Assessment's Mot. to Dismiss, at 9 n.8.  The agreement ensures that Founders like Warrenfeltz will receive 100% of Base Value for their shares.  There is also no dispute that Hogan Assessment breached paragraph 11(h) of the 2013 Stockholders' Agreement because it incurred debt in excess of $50,000 when it purported to purchase Warrenfeltz's shares under an "Optional Purchase" event without his consent.  Finally, there is no dispute as to the amount of Warrenfeltz's contract damages.  Using Hogan Assessment's calculation of the value of Warrenfeltz's 1,500 shares at 25% of Base Value at $5,858,000, the company cannot dispute that the value of Warrenfeltz's 1,500 shares at 100% of Base Value is $23,432,000.

> A.  The 2013 Stockholders' Agreement requires Hogan Assessment to purchase Warrenfeltz's stock for 100% of Base Value because he is a Founder of the company under the agreement.

Paragraph 11 of the 2013 Stockholders' Agreement built in special protections for Warrenfeltz and Hogan as Founders of the company. The protections ensure that Warrenfeltz and Hogan can redeem their shares at 100% of Base Value, regardless of their reason for redeeming the stock. This is evident from the plain meaning of the terms of the agreement. The Court will decide whether the agreement is ambiguous, and interpreting an unambiguous contract is a question of law for the court. *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007); *see also Osprey LLC v. Kelly-Moore Paint Co.*, 984 P.2d 194, 198 (Okla. 1999). "A contract term is ambiguous only if it can be interpreted as having two different meanings." *Osprey*, 984 P.2d at 199.

The 2013 Stockholders' Agreement requires both Founders' approval for Hogan Assessment to spend or to incur debt in an amount exceeding $50,000. These unique Founders' rights have an exception, found at the end of paragraph 11: each Founder agrees in advance to vote his shares to permit redemption in any Mandatory Purchase Event or in connection with the funding of the Employee SHARES Pool. This means that if a Founder elects to redeem his shares in a mandatory purchase under paragraph 3(a) of the 2013 Stockholders' Agreement, the other Founder cannot prevent the redemption.[2] The unambiguous language at the end of paragraph 11 does not, however, provide an exception to the requirement of Founder approval when the redemption falls under an optional redemption in a breach event under paragraph 3(b), an optional redemption in event of divorce under paragraph 3(c), or an optional redemption under paragraph 3(d) for certain regular terminations of employment. The exception at the end of paragraph 11 shows that the Founders intended to be able to redeem their shares at 100% of Base Value regardless of the circumstances, and the other Founder cannot stand in the way. An

---

[2] It also means that a Founder cannot prevent the Company from funding the Employee SHARES Pool as provided in Paragraph 9(c), which required Hogan Assessment to purchase 1,000 of Warrenfeltz's shares for cash at 100% Base Value.

8

optional purchase for a breach event requires an expenditure or debt in excess of $50,000, which requires the approval of both Founders. Warrenfeltz never consented to an optional purchase of his shares for less than 100% of Base Value. The company's purported purchase of Warrenfeltz's shares for 25% of Base Value therefore breached the 2013 Stockholders' Agreement.

"The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made." *Bank of the Wichitas v. Ledford*, 151 P.3d 103, 111 (Okla. 2006). When determining the parties' intent, the court must give the terms of the contract "their plain and ordinary meaning." *Id.* "Only when the contractual document is unclear or inconsistent may courts utilize extrinsic evidence to ascertain intent." *Logan Cty. Conservation Dist. v. Pleasant Oaks Homeowners Ass'n*, 374 P.3d 755, 762 (Okla. 2016); *see also Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003) ("If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended."). Summary judgment against Hogan Assessment for breach of contract is proper because the company concedes the validity of the 2013 Stockholders' Agreement, its provisions concerning Founders' consent are unambiguous, and Hogan Assessment did not obtain Warrenfeltz's consent to purchase his 1,500 shares for less than 100% of Base Value.

The Court should decide this issue as a matter of law based on the unambiguous terms of paragraph 11(h) of the 2013 Stockholders' Agreement. In determining whether a contract is ambiguous, courts must "construe the words as they are 'understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless special meaning is given to them by usage.'" *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767–68 (10th Cir. 1999) (quoting 15 Okla. Stat. § 160). The terms of the agreement are easily understood. Applying the words in their ordinary sense, the 2013 Stockholders' Agreement requires the company to obtain *both* Founders' consent before "[t]he expenditure of any funds or the incurrence of any indebtedness… in excess of Fifty

9

Thousand Dollars ($50,000.00)." The Founders' approval requirement is subject to two exceptions identified in "the last sentence of Paragraph 11": the Company does not have to obtain Founders' approval to purchase shares "in any Mandatory Purchase Event or in connection with the funding of the Employee SHARES Pool." Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders' Agreement, ¶ 11.

Here, Hogan Assessment did not purchase Warrenfeltz's stock as a "Mandatory Purchase Event" or to fund the Employee Shares Pool. A "Mandatory Purchase Event" and the funding of the Employee Shares Pool both require the company to purchase Warrenfeltz's shares at 100% of Base Value. *Id.* ¶¶ 3(a), 9(c)(i)(b). Warrenfeltz's consent would not be required if Hogan Assessment purchased Warrenfeltz's shares at 100% of Base Value. But Hogan Assessment purchased Warrenfeltz's shares at 25% of Base Value under the "Optional Purchase in a Breach Event" procedure of paragraph 3(b), which is *not* an exception to the Founders' consent requirement of paragraph 11(h).

The intent of the Founders' consent requirement of paragraph 11(h) is self-evident from the plain meaning of the provision's language. The Founders did not empower Hogan Assessment to purchase their shares without consent for an amount less than 100% of Base Value. Indeed, the actions by Hogan Assessment in this case—firing Warrenfeltz "for cause" just weeks before his planned redemption to trigger an "Optional Purchase" event under paragraph 3(b) of the 2013 Stockholders' Agreement at 25% of Base Value—is precisely what the Founders' consent requirement of paragraph 11(h) was designed to prevent. The parties to the 2013 Stockholders' Agreement did not include the "Optional Purchase in a Breach Event" under paragraph 3(b)—the provision the company invoked to purchase Warrenfeltz's 1,500 shares—as an exception to the Founders' consent requirement of paragraph 11(h). Rather, the only two exceptions to the Founders' consent requirement of paragraph 11(h) are delineated in "the last sentence of this Paragraph 11": the purchase of shares in (1) a "Mandatory Purchase Event" or (2) "in connection with the funding of the Employee SHARES Pool." *Id.* ¶ 11. Both of these

10

exceptions require the company to purchase the shares at 100% of Base Value. *Id.* ¶ 3(a). The only logical interpretation of the Founders' consent provision of paragraph 11(h) is that the company must obtain Warrenfeltz's consent in order to purchase his shares for less than 100% of Base Value under the "Optional Purchase" provision of paragraph 3(b).

Courts "will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision." *S. Corr. Sys., Inc. v. Union City Public Sch.*, 64 P.3d 1083, 1089 (Okla. 2002). When a contract is susceptible to just one reasonable interpretation, the court should apply that interpretation as a matter of law at the summary-judgment stage. *Bank of the Wichitas*, 151 P.3d at 111. The 2013 Stockholders' Agreement is susceptible to only one interpretation of the Founders' rights: they are to receive 100% of Base Value for their stock at redemption, regardless of the reason for redemption. With only one interpretation, the Court should enter judgment as a matter of law for Warrenfeltz and enforce his rights as a Founder. *See DJRJ, LLC v. U-Swirl, Inc.*, No. 16-CV-21-GKF-FHM, 2017 WL 2961375, at *1 (N.D. Okla. July, 11, 2017) (Frizzell, J.) ("[I]n a contract dispute, if contractual language is unambiguous, summary judgment should be granted.") (citations and internal quotation marks omitted).

  **B. The 2013 Stockholders' Agreement requires Hogan Assessment to purchase Warrenfeltz's shares for 100% of Base Value because he has reached "Retirement Age" under the Agreement.**

Hogan Assessment was obligated to purchase Warrenfeltz's shares at 100% of Base Value because he had reached "Retirement Age." The Company therefore breached paragraphs 2(c) and 3(a) of the 2013 Stockholders' Agreement.

The 2013 Stockholders' Agreement provides all stockholders—not just Founders—with the right to force the company to purchase their shares at 100% of Base Value after they reach "Retirement Age." *See* Warrenfeltz Aff., Ex. 1-A, 2013 Stockholders Agreement, ¶¶ 2(c), 3(a). A stockholder reaches "Retirement Age" once he is at least fifty-five years old and provides "not less than ten (10) years of service." *Id.* ¶ 2(c). Under paragraph 3(a), a stockholder who has

reached "Retirement Age" can require the company to purchase his shares for 100% of Base Value. *Id.* ¶ 3(a). There is no dispute that Warrenfeltz reached "Retirement Age" before the company elected to purchase his shares in May and July 2017. Warrenfeltz is 62 years old and provided 17 years of service.

The intent of the "Retirement Age" buy-out provisions of paragraphs 2(c) and 3(a) is self-evident—stockholders who have dedicated the most productive years of their lives to Hogan Assessment may require the company to purchase their shares for full value once they reach retirement age. The only logical—and fair—reading of the 2013 Stockholders' Agreement is that once a shareholder reaches "Retirement Age" Hogan Assessment cannot redeem his or her shares for any amount other than the "Mandatory Purchase Event Price" (*i.e.*, 100% of Base Value) under paragraph 3(a).

## II. The calculation of contract damages is not in dispute.

The only contractually permissible way for Hogan Assessment to purchase Warrenfeltz's 1,500 shares without his consent is to invoke a "Mandatory Purchase Event," which requires a valuation of Warrenfeltz's shares at 100% of Base Value. Hogan Assessment concedes that Warrenfeltz's 1,500 shares at 25% of Base Value are worth $5,858,000. *See* Richter Decl., Ex. 2-C, letter from Christopher Kingham to John Richter (dated July 21, 2017). The company thus cannot dispute that the value of Warrenfeltz's 1,500 shares at 100% of Base Value is $23,432,000. Accordingly, Warrenfeltz is entitled to compensatory damages of $23,432,000 in connection with his breach of contract claim.

## CONCLUSION

There is no genuine dispute that Hogan Assessment breached the unambiguous terms of the 2013 Stockholders' Agreement. As a Founder of Hogan Assessment, Warrenfeltz has a contractual right to redeem his stock for 100% of Base Value. The Founders retained the right to preserve the value of their stock regardless of who might ultimately be running the company. The 2013 Stockholders' Agreement also recognizes the value of long-term employees and

guarantees their right to redeem their stock for 100% of Base Value once they reach age 55 with 10 years' service. Under either scenario, Warrenfeltz is entitled to have his stock redeemed at 100% of Base Value; the Court can reach these conclusions as a matter of law. Warrenfeltz is therefore entitled to compensatory damages of $23,432,000; the Court should enter summary judgment in his favor for that amount on his breach of contract claim.

Dated: November 30, 2017

Respectfully submitted,

*/s/ John C. Richter*
John C. Richter, OBA No. 20596
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
jrichter@kslaw.com
(202) 626-5617 (telephone)
(512) 457-3737 (fax)

Michael J. Biles (*pro hac vice*)
Texas Bar No. 24008578
Srimath S. Subasinghe (*pro hac vice*)
Texas Bar No. 24093226
KING & SPALDING LLP
500 West 2nd Street, Ste. 1800
Austin, TX 78701
mbiles@kslaw.com
ssubasinghe@kslaw.com
(512) 457-2000 (telephone)
(512) 457-2100 (fax)

John D. Russell, OBA No. 13343
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4217
jrussell@gablelaw.com
(918) 595-4800 (telephone)
(918) 595-4990 (fax)

**COUNSEL FOR PLAINTIFF
RODNEY WARRENFELTZ**

## CERTIFICATION

  I hereby certify that on November 30, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

  J. Patrick Cremin - pcremin@hallestill.com
  Thomas A. Creekmore III - tcreekmore@hallestill.com
  Johnathan L. Rogers - jrogers@hallestill.com
  Matthew Triggs - mtriggs@proskauer.com

  **COUNSEL FOR DEFENDANT**

*/s/ John C. Richter*
John C. Richter
