# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RODNEY WARRENFELTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-428-GKF-FHM |
| | ) | |
| HOGAN ASSESSMENT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Before the court is the Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint [Doc. #32] of defendant Hogan Assessment Systems, Inc. (HAS). For the reasons set forth below, the motion is granted.

### I. Allegations of the Amended Complaint

The Amended Complaint alleges the following facts. HAS is a personality-test publisher and assessment consulting firm headquartered in Tulsa, Oklahoma. [Doc. #26, p. 4, ¶ 15-16]. At the time of HAS's incorporation, husband and wife Robert and Joyce Hogan owned 100% of the company's stock. [*Id.*, ¶ 15]. On July 31, 2000, the Hogans and Rodney Warrenfeltz entered into a stockholders' agreement ("2000 Stockholders' Agreement"), pursuant to which Warrenfeltz purchased 20% of HAS's stock, leaving Robert and Joyce Hogan owning 40% each. [*Id.*, p. 5, ¶ 19]. The 2000 Stockholders' Agreement required HAS to purchase a shareholder's shares if the shareholder should "cease to be employed" by HAS and set the purchase price at $4,000 per share. [*Id.*, ¶ 20]. On that same date, Warrenfeltz entered into an employment agreement ("2000 Employment Agreement") to serve as HAS's Managing Partner. [*Id.*, p. 6, ¶ 22]. Pursuant to paragraph 8 of the 2000 Employment Agreement, HAS could not terminate Warrenfeltz for

"breach of his obligations, duties or responsibilities," unless it provided him thirty-days written notice of the breach with an opportunity to cure. [*Id.*].

On July 31, 2000, HAS also adopted the Amended By-Laws that remain in effect. [*Id.*, ¶ 24]. The Amended By-Laws prohibit shareholder actions that conflict with the Stockholders' Agreement. [*Id.*, p. 7, ¶ 25]. Further, the Amended By-Laws govern the authority of the company's Board of Directors, and provide that the Board of Directors "may, by affirmative vote of a majority of the members of the Board then in office, remove any officer elected or appointed by the Board." [*Id.*, ¶ 26].

On October 7, 2010, HAS altered the term and renewal provisions of the 2000 Employment Agreement. [*Id.*, p. 11, ¶ 45-46]. The amendment extended the period of the 2000 Employment Agreement for a period of five years, unless earlier termination was provided as under the 2000 Employment Agreement, after which the 2000 Employment Agreement would automatically extend for successive additional one year terms, unless either party gave written notice to the other party at least ninety days prior to the end of the term. [*Id.*, ¶ 46].

In September 2012, Joyce Hogan suddenly passed away, resulting in the transference of her HAS stock to Robert Hogan. [*Id.*, p. 12, ¶ 51-52]. After Joyce Hogan's death, Robert Hogan's business relationship with Warrenfeltz began to deteriorate, and Warrenfeltz expressed his desire to sell his equity interest in HAS in 5% increments. [*Id.*, p. 13-14, ¶ 55 and 57].

In connection with Robert Hogan's interest in making other HAS employees stockholders, the 2000 Stockholders' Agreement was revised effective as of January 1, 2013 ("2013 Stockholders' Agreement). [*Id.*, p. 14, ¶ 58 and 60]. The 2013 Stockholders' Agreement identified Warrenfeltz and Robert Hogan as having "Founders' Rights," special rights not shared by other shareholders. [*Id.*, p. 14-15, ¶ 61]. Pursuant to the "Founders Rights," certain actions required the

affirmative vote of both Warrenfeltz and Robert Hogan, including: any material change of the bylaws, the expenditure of any funds or the incurrence of any indebtedness in excess of $50,000.00, and any change in the governance provisions of paragraph 9. [*Id.*, ¶ 61].

On October 1, 2014, the 2013 Stockholders' Agreement was amended to accelerate Warrenfeltz's redemption of his shares to HAS. [*Id.*, p. 15-16, ¶ 63-64]. Pursuant to the amendment, HAS was required to purchase 500 shares from Warrenfeltz on October 1, 2014 and another 500 shares from him on June 1, 2017. [*Id.*, p. 16, ¶ 64].

On July 1, 2016, Robert Hogan sent a letter to Warrenfeltz stating that Hogan had unilaterally made the decision not to renew Warrenfeltz's employment agreement, and that Warrenfeltz would become an "at will" employee effective October 7, 2016. [*Id.*, p. 20-21, ¶ 82-83]. Some ten months later, Hogan sent Warrenfeltz a letter stating that HAS terminated Warrenfeltz's employment effective May 8, 2017 because Warrenfeltz had engaged in "conduct that constitutes grounds for the termination of [his] employment with [HAS] for cause." [*Id.*, p. 21-22, ¶ 88]. The letter also asserted that the termination of Warrenfeltz for cause permitted HAS to purchase Warrenfeltz's remaining stock for "twenty-five percent (25%) of Base Value, with payments to be made in one hundred and twenty (120) equal installments with no downpayment." [*Id.*, p. 23, ¶ 92]. The termination letter enclosed two purported Consents of Shareholders of HAS and a purported Unanimous Consent of the Directors of HAS. [*Id.*, ¶ 93].

Based on these factual allegations, the Amended Complaint asserts three counts: (I) breach of contract, (II) breach of the implied covenant of good faith and fair dealing, and (III) conversion.

## II. Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, "[a] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are not sufficient to state a claim for relief." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (quoting *Iqbal,* 556 U.S. at 678).

## III. Analysis

Defendants move to dismiss count II – breach of the implied covenant of good faith and fair dealing and count III – conversion. The court will separately consider each count.

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that the allegations of the Amended Complaint do not give rise to a tort claim for breach of the implied covenant of good faith and fair dealing under Oklahoma law.

"Every contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mut. Assurance Adm'rs Inc.*, 87 P.3d 559, 561 (Okla. 2004). "In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability." *Id.* However, "[w]hen the factual situation warrants, an action for a breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing," commonly referred to as a "bad faith" tort. *Beshara v. Southern Nat'l Bank*, 928 P.2d 280, 291 (Okla. 1996). The factual situation warrants when a "special relationship" exists between the parties. *Embry v. Innovative Aftermarket Sys. L.P.,* 247 P.3d 1158, 1160 (Okla. 2010). A "special relationship" that gives rise to tort liability for bad faith exists only in limited circumstances and "is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." *Id.*

The Amended Complaint includes no allegations from which the court may infer that a "special relationship" existed between the parties. The Amended Complaint cannot reasonably

construed to allege that either the 2013 Stockholder Agreement or 2000 Employment Agreement is a contract of adhesion. On the contrary, the Amended Complaint alleges that, prior to executing the 2000 Employment Agreement, "[t]he Hogans actively courted Warrenfeltz to join HAS because he had a long and significant track record growing successful businesses," and that Warrenfeltz conditioned his joining HAS on "obtain[ing] an equity stake in the company and hav[ing] consent rights over significant corporate decisions." [Doc. #26, p. 4-5, ¶ 18]. As for the 2013 Stockholder Agreement, the Amended Complaint alleges that Robert Hogan and Warrenfeltz, among others, discussed the revisions and that the parties agreed to those terms, including Warrenfeltz's receipt of "Founder's Rights" equal to Robert Hogan. [*Id.*, p. 13-14, ¶ 58-60]. Thus, taking the allegations of the Amended Complaint as true, it is clear that the parties were at arms-length, with relatively equal bargaining power, and that neither the 2013 Stockholder Agreement nor 2000 Employment Agreement are contracts of adhesion. *See Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988).

Moreover, the Amended Complaint does not allege that the relationship between the parties concerned the elimination of risk. Instead, the contracts delineating the relationship were intended to be to the parties' commercial advantage. *Cf. Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008) (declining to find special relationship when agreement was "based upon each party's attempt to obtain a commercial advantage" and therefore was dissimilar to situations where one party is "particularly vulnerable to oppressive tactics on the part of an economically powerful entity") (quoting *Christian v. American Home Assurance Co.*, 577 P.2d 899, 902 (Okla. 1977)).

Nor are the contractual relationships between the parties in this case of the type previously found by Oklahoma courts to give rise tort liability. Although a special relationship exists between an insurer and insured due to "the quasi-public nature of insurance companies and the need to

subject the companies to state control for the protection and benefit of the public," *Christian,* 577 P. 2d at 902 (quoting *Fletcher v. Western Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78 (Cal. App. 1970)), the Oklahoma Supreme Court has "expressed reluctance to extend tort recovery for bad faith beyond the insurance field." *Embry*, 247 P.3d at 1160; *see also First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993). Thus, Oklahoma courts have declined to permit bad faith tort claims in the context of a variety of commercial contracts, including stock purchase agreements. *See, e.g., Rodgers,* 756 P.2d at 1226 (commercial loan contract); *Hinson v. Cameron*, 742 P.2d 549, 554 (Okla. 1987) (at-will employment relationship); *Davis v. PMA Cos., Inc*., No. CIV-11-359-C, 2013 WL 866893, at *5-6 (W.D. Okla. Mar. 7, 2013) (stock purchase agreement); *McGregor v. Nat'l Steak Processors, Inc*., No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *4-5 (N.D. Okla. Feb. 1, 2012) (stock purchase agreement); *Cimarex Energy Co. v. Calhoon*, No. CIV-11-525, 2012 WL 1371386, at *4-5 (W.D. Okla. Apr. 19, 2012) (oil and gas lease); *Sonic Indus., LLC v. Halleran,* No. CIV-16-709-C, 2017 WL 239388, at *3 (W.D. Okla. Jan. 19, 2017) (franchisor-franchisee agreement); *OGP Energy Ltd. P'ship v. QEP Energy Co*., No. CIV-14-842-R, 2014 WL 4629861, at *1-2 (W.D. Okla. Sept. 16, 2014) (cotenant relationship). Absent a clear directive from the Oklahoma Supreme Court, this court is not persuaded that the contractual relationships in this case fall within the narrow scope of "special relationships" that provide a basis for bad faith tort liability.[1]

---

[1] The Amended Complaint alleges: "The law also recognizes a special relationship between the controlling shareholder of a close corporation and its minority shareholders because the controlling shareholder essentially has the power to unjustly deny a minority shareholder any return from his investment. Accordingly, the law imposes a fiduciary relationship between the controlling shareholder and minority shareholders." [Doc. #26, p. 28-29, ¶ 115]. However, as discussed herein, Oklahoma law courts have declined to find a "special relationship" sufficient to permit independent tort claims under similar circumstances. *See, e.g., Davis*, 2013 WL 866893, at *5-6; *McGregor,* 2012 LW 314059, at *4-5. Thus, the court is not bound to accept plaintiff's single

Plaintiff argues that, even if no special relationship existed, he has adequately stated a claim for breach of the implied duty of good faith and fair dealing because the Amended Complaint alleges reckless and wanton misconduct by HAS. The Oklahoma Supreme Court has recognized that, in some circumstances, "[g]ross recklessness or wanton negligence on behalf of a party to a contract *may call for*" imposition of tort liability. *Rodgers,* 756 P.2d at 1227 (emphasis added). Such circumstances are not alleged here. Plaintiff does not allege conduct that is qualitatively similar to that asserted in *Beshara,* the only Oklahoma Supreme Court case cited by plaintiff in which the court permitted a bad faith tort to proceed based on allegations that a bank's actions in withholding the funds in a customer's account were "intentional, malicious, and in reckless and wanton disregard." *Beshara,* 928 P.2d at 288. Rather, plaintiff's allegations relate to the deterioration of an arms-length, commercial business relationship.[2] *See Davis,* 2013 WL 866893, at *6; *RJB Gas Pipeline Co. v. Colo. Interstate Gas Co.*, 813 P.2d 1, 11-12 (Okla. Civ. App. 1989). Further, even viewed in the light most favorable to plaintiff, the allegations do not support an

---

assertion that a special relationship existed. *See Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Iqbal,* 556 U.S at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Nor is the court persuaded by plaintiff's assertion that a special relationship existed between plaintiff and Robert Hogan, as Robert Hogan is a not a party to this litigation.

[2] Plaintiff argues that the Delaware Supreme Court's decision in *Dieckman v. Regency GP LP*, 155 A.3d 358 (Del. 2017) is instructive. However, that case involved a dispute between limited partners/unit holders of a master limited partnership, and considered whether a contract must include a "safe-harbor" provision detailing specific fiduciary duties in order for a unitholder to bring suit. *Id.* at 368. In this case, however, not only are the contracts governed by Oklahoma law, but HAS is a closely held corporation. Further, Warrenfeltz is factually distinguishable from the shareholders in those suits, as the Amended Complaint alleges he possessed "Founders Rights," by virtue of which he was "grant[ed] . . . special rights that the other stockholders do not share." [Doc. #26, p. 13-14, ¶ 56-58, 61].

inference of anything other than intentional conduct by defendant. *See Parret v. UNICCO Serv. Co.,* 127 P.3d 572, 575-76 (Okla. 2005), *superseded by statute on other grounds*, 85 O.S. § 302, *as stated by Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 645 F. App'x 733 (10th Cir. 2016) (distinguishing willful and wanton misconduct from intentional misconduct as two distinct levels within the "higher tier" of tortious conduct). "Plaintiff can not convert an ordinary breach of contract claim into a tort merely by alleging that the breach was intentional." *McGivern, Gilliard & Curthoys v. Chartis Claims, Inc.,* No. 12-CV-0200-CVE-TLW, 2012 WL 2917336, at *3 (N.D. Okla. July 17, 2012). Thus, plaintiff has not stated a claim for breach of the implied covenant of good faith and fair dealing as a matter of law, and defendant's motion to dismiss count II is granted.

  *B. Conversion*

  Defendant asserts that plaintiff cannot state a tort claim for conversion as a matter of Oklahoma law. The court agrees.

  Under Oklahoma law, "[c]onversion does not lie for a debt." *Welty v. Martinaire of Okla., Inc.,* 867 P.2d 1273, 1275 (Okla. 1994); *see also Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 753 P.2d 1330, 1332 (Okla. 1987) ("The general rule is that an action for conversion of funds will not lie for a general debt."). That is, a failure to pay does not result in the deprivation of personal property. *Traylor v. Nat'l Liab. & Fire Ins. Co.,* No. CIV-11-742-W, 2011 WL 13114113, at *3 (W.D. Okla. Sept. 12, 2011).

  The Amended Complaint alleges that, on July 21, 2017, HAS unlawfully attempted to purchase plaintiff's remaining HAS shares at a 75% discount, rather than at the per-share price at Base Value. [Doc. #26, p. 30-31 ¶ 126]; *see also* [*Id.*, p. 24-25, ¶ 95]. As a result, the Amended Complaint seeks monetary damages. [*Id.*, p. 31, ¶ 127]. Notably, the Amended Complaint does

not seek the return or transfer of the HAS shares. *Cf. U.S. Cities Corp. v. Sautbine*, 259 P. 253, 255 (Okla. 1927) ("A conversion of such stock may be by a third party or by the corporation itself. When under its own by-laws or under a statute it is necessary that the transfer of the stock be made on its books *and the corporation wrongfully refuses to make the transfer*, such refusal is a conversion of the stock.") (emphasis added).

In opposition to dismissal, plaintiff argues that he did not provide HAS with consent to force a buy-out of his company stock at 25% of its value and therefore HAS wrongfully exercised dominion over plaintiff's personal property. However, plaintiff's argument is belied by the Amended Complaint's allegation that plaintiff "wanted to sell his equity interest in HAS," "divest[ing] his HAS stock in 5% increments, culminating in his selling off of the last 5% of his HAS stock on his 65th birthday"; that "HAS was required to purchase 1,000 of Warrenfeltz's shares of HAS stock,"; and that "[h]aving elected to redeem his shares of HAS stock and retire-in mid 2017, Warrenfeltz began telling his clients and HAS employees about this upcoming retirement . . . ." [Doc. #26, ¶¶ 57, 63-64, 87]. Even viewed in the light most favorable to plaintiff, the allegations of the Amended Complaint can reasonably be construed only to assert a dispute regarding the *appropriate purchase price* of plaintiff's HAS shares—that is, defendant's failure to the pay the remaining 75% of the per-share price at Base Value. A failure to pay sufficient consideration does not result in the deprivation of personal property, and the Amended Complaint does not state a claim for conversion under Oklahoma law.

**IV.	Conclusion**

WHEREFORE, Defendant Hogan Assessment Systems, Inc.'s Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint [Doc. #32] is granted.

DATED this 29th day of March, 2018.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE